JEAN K. LINER, Individually and as Trustee of the Property of VICTORIA J. LINER, et al., Appellants, *v.* PENN MUTUAL LIFE INSURANCE COMPANY, Respondent. (Action No. 1.)

JEAN K. LINER, Individually and as Trustee of the Property of RICHARD L. LINER, et al., Appellants, *v.* PENN MUTUAL LIFE INSURANCE COMPANY, Respondent. (Action No. 2.)

Fourth Department, October 26, 1955.

*John W. Branch* for appellants.

*Howard M. Woods* for respondent.

VAUGHAN, J. These two actions require the interpretation of two policies of life insurance. The policies were taken out for educational purposes and contain double indemnity clauses. The insured having died an accidental death, the question is whether the stated amounts subject to annual withdrawal are thereby doubled. The beneficiaries seek declaratory judgments to that effect. The insurance company, on the other hand, contends that the double indemnity clauses have no other effect than to increase the principal sum of the policies, with the withdrawal privileges remaining unchanged. That was the position taken by the Supreme Court, and the beneficiaries appeal from the resulting declaratory judgments.

The first policy was issued in 1940, when the insured's son Richard was less than one-year old. The policy was in the principal amount of $5,000 with double indemnity. Upon the death of the insured, the net proceeds were to be retained under Option D and interest paid to Richard for life. After reaching age seventeen, Richard could withdraw twice in each year '' an amount equal to but not to be more nor less than the sum of $625.00.'' It will be noted that the principal was to be conserved until Richard was ready for college; thereafter, $1,250 could be withdrawn annually, so that the proceeds would be exhausted during a four-year college course. During Richard's minority all sums due to him were to be paid to the insured's widow as trustee, and she was to exercise the right of withdrawal for him. On Richard's death the net proceeds remaining were to be paid to her in one sum. By a supplemental agreement attached to and made a part of the policy, the company agreed to pay the double indemnity benefit '' in addition to and together with the Sum Insured by this policy.'' It should be noted that the application for this policy provided that after Richard attained age seventeen, one eighth of the proceeds could be withdrawn twice yearly for educational purposes. In place of the proportion (one eighth) the policy contains a figure ($625) which is one eighth of $5,000, and it would seem that the policy was not intended to vary the application. The numerical equivalent of the fraction employed by the insured in his application adequately expressed his primary intention and could only fail to do so in case of his extremely unlikely death by violent, external and accidental means.

Further evidence that the insured regarded $625 as the practical equivalent of one eighth may be found in the fact that in his subsequent application for a policy to benefit his second child Victoria, he again provided that one eighth of the proceeds could be withdrawn twice yearly. For the proportion, the policy as issued again substituted the numerical equivalent. The policy for Victoria was issued in 1942, when she was only a few months old. Payment of the double indemnity benefit was to " be made in the same manner as and shall be in addition to the Sum Insured or Death Benefit." The policy was substantially like that taken out for Richard, except that before Victoria attained age seventeen her mother as trustee was entitled to withdraw $500 per year. It undoubtedly occurred to the insured, as it would to any sensible man, that if he were to die leaving two young children, his wife might have a difficult time. Accordingly, he permitted a limited withdrawal before Victoria reached age seventeen. Thereafter, " an amount not to exceed $1250.00 in any one year " could be withdrawn. The withdrawal privileges were to be noncumulative.

On July 9, 1943, the insured executed a change of beneficiary of both policies. The beneficiary clauses of both policies are now identical. The insured continued to elect Option D. The interest is payable to his widow as trustee during the minority of the beneficiary. The widow may also exercise the withdrawal privileges during the beneficiaries' minority. Before the receipt by the company of an affidavit from a college to the effect that the beneficiary is enrolled there, $500 may be withdrawn each year in one sum. After receipt of such an affidavit, $1,250 may be withdrawn each year in one sum or in multiples of $625. The withdrawal privileges are noncumulative. Upon the death of the primary beneficiary, the remainder shall be paid to the widow in one sum.

The purpose of the insured throughout these transactions was to protect his children during approximately the first twenty years of their lives and to insure that they would receive a college education. The period during which he desired to assist them was substantially certain and known to him; it would not vary according as he might or might not die an accidental death. Regardless of the manner in which he might die, he wished to assist his children through college so that they could take care of themselves. That would require twenty years, not forty. Yet the insurance company interprets the withdrawal privileges so that the duration of the protection period varies according to the way in which the insured met

his death. We think the desired protection period would be the same in either case.

The insured obviously contracted for double indemnity for the reason that a sudden death from violent, external and accidental means would deprive him of all opportunity to make further provision for his children. He accordingly provided that in that event the principal amount of each policy should be doubled. But the extra $5,000 must be distributed at the same time and in the same way as the basic death benefit. The supplemental agreements use the language " in addition to and together with " and " in the same manner as and  *  *  *  in addition to " the basic $5,000. An article on double indemnity has stated: " Double indemnity is a desirable supplement to the primary life insurance. It is intended to provide double payment to the beneficiary at the time of greatest need when the insured meets an untimely and premature death as the result of accidental injury." (Kelly, Recent Developments in Double Indemnity Law, 33 Corn. L. Q. 360.) The " time of greatest need " in the present case is the time immediately after the insured's death, when his children are still dependent. It is then that he intended them to have the benefit of the double indemnity provisions. " Double indemnity " means twice as much, not twice as long.

We conclude that the withdrawal privileges under Option D should be doubled. Nothing else would satisfy the purpose of the insured to provide for his children during a fixed period of their lives which would not vary according to the manner of his death, and nothing else would satisfy his direction set forth in the supplemental contract that the extra $5,000 be distributed " in addition to and together with " the basic death benefit.

The judgments should be reversed and judgments granted to the plaintiffs declaring that $1,000 may be withdrawn each year until receipt of the affidavit mentioned in the change of beneficiary and $2,500 per year thereafter.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Wheeler, and Van Duser, JJ.

Judgment [in action No. 1] reversed on the law with costs and judgment directed to be entered in favor of the plaintiffs in accordance with the opinion. The findings of fact have been examined and affirmed.

In action No. 2 same decision and like cause of action as in companion case of *Liner* v. *Penn Mut. Life Ins. Co.*